IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED

2007 AUG -3  A 10: 2ᵗ

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

ERIC M. PEAGLER,

    Petitioner,


vs

Case No. 2:07CV703 mht

CR. NO. 2:02cr016-A

UNITED STATES OF AMERICA,

    Respondent.

_____/


MEMORANDUM OF LAW IN SUPPORT
OF MOTION FILED PURSUANT TO 28 U.S.C.
SECTION 2255 TO VACATE, SET ASIDE, OR CORRECT

---

The Petitioner, Eric M. Peagler, pro se, files this Memorandum in Support of his motion under 28 U.S.C. § 2255. In this motion is a clear claim of a constitutional and fundamental error. See United States Constitution Amendment VI and specific violation of Strickland v. Washington, 466 U.S. 668, 688, 692, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). for the reasons stated hereafter, the § 2255 motion is due to be granted.

A.  Course of Proceedings.

Petitioner pled guilty and subsequently sentenced on November 9, 2002, to a term of 180 months. The term consist of 180 months on Count One. The conviction stemmed from conspiracy to possess with the intent to distribute and distribution of drugs.

Petitioner entered into an agreement to assist the Government in the investigation of the drug trafficking activities of Leon Carmichael. Thereafter, the Government (without Petitioner's attorney present) promised Petitioner that if he assisted in a good faith effort, he would be recommended for a 50% reduction in his sentence. On December 1, 2005, Assistant United States Attorney A. Clark Morris filed a motion for reduction in Petitioner's sentence, recommending a twelve (12) months reduction, when their was an agreement for a higher reduction. Once Petitioner discovered this illronish reduction, without his attorney even notifing him or this Honorable Court of the erroneous reduction, notice of appeal was filed, which was voluntary dismissed on November 6, 2006. This Petition followed.

B.  **Statement of Facts.**

Petitioner entered into a cooperation agreement pursuant to Federal Rules Criminal Procedure 35(b) of the Sentencing Guidelines in which he would receive a 50% downward departure. Petitioner assisted law enforcement, which assistance, the Government viewed as substantial assistance.

Furthermore, Assistant United States Attorney A. Clark Morris proceed and filed a motion for reduction of Petitioner's sentence without any foundation concerning the agreement that had been made. By this not being mentioned, briefly did not allow the Judge to properly evaluate correctly the value of the Petitioner's agreement.

2

II    MEMORANDUM OF LAW

GROUND ONE:    WHETHER PETITIONER RECEIVED ADEQUATE ASSISTANCE
OF COUNSEL AS PROVIDED FOR BY THE SIXTH AMENDMENT
WHEN THE GOVERNMENT ARBITRARILY AND IN BAD FAITH
WITHHELD PROMISED BENEFITS FOR HIS SUBSTANTIAL
ASSISTANCE.

The Sixth Amendment provides, in pertinent part, as

follows:    In all criminal prosecutions, the accused shall
enjoy the right to have the assistance of counsel
for his defense. .

A criminal defendant has a right to reasonably effective

assistance of counsel at all critical stages of the

proceedings.    Kirby v. Illinois, 406 U.S. 682, 690, 92 S.Ct.

1877, 32 L.Ed.2d 411 (1972)(internal quotation marks omitted

and emphasis removed).

A defendant is not required to invite counsel to

accompany him to a debriefing session, nor is the government

prevented from conditioning a cooperation agreement on the

defendant's waiver of this protection.

Here there is no implied waiver.    As in the context of

the right to counsel, a waiver is valid only when "it can be

shown from the record that the waiver was made knowingly and

intelligently and this Court must "indulge in every

reasonable presumption against waiver," Brewer v. Williams,

430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977).

Silence standing alone is not enough.

The two-part test of Strickland v. Washington, 466 U.S.

668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) is the controlling

authority to evaluate the effectiveness of counsel; (1)

3

whether counsel provided reasonably effective assistance, and (2) where there is a reasonable probability of a different result with effective assistance.

In the case sub judice, Petitioner asserts that, in light of the reasons and authorities cited, his attorney Jeffery C. Duffey did not provide "the effective assistance" called for by Strickland, 466 at 686. Counsel knew of Petitioner's substantial assistance rendered and the agreement that had been agreed upon, yet at no time did he present this to the sentencing Judge after receiving the Government's Motion for Reduction in Sentence and Certification of Substantial Assistance pursuant to Rule 35(b) of the Rules of Criminal Procedure, Dkt. # 292, filed December 1, 2005. Counsel did not ask for a specific performance of the Petitioner's agreement at this time, so that the agreed reduction agreement could be evaluated into the Court's consideration. Counsel's silence retarded Petitioner efforts to have his sentence significantly reduced. Plainly the Sixth Amendment is not satisfied where a defendant has counsel in name only. See e.g. United States v. Nagib, 56 F.3d 798 (7th Cir. 1995)(defendant asked lawyer to file appeal, lawyer did not, court notes that [a]bandonment constitutes a per se violation of Sixth Amendment). Long before this Honorable Court received and granted the absurdity Rule 35(b) motion, Mr. Duffey's appearance as counsel of record for Petitioner may have given the appearance that Petitioner had counsel, but the

4

reality was quite different. Thus, from the beginning of this cooperation agreement, Mr. Duffey abandoned the Petitioner. Counsel was not at the initial agreement for Petitioner's assistance for a 50% reduction in his sentence, nor did he appear for the Government to debrief Petitioner, which is guaranteed to save a defendant from "falling into traps devised by a lawyer on the other side and to see to it that all available defenses are proffered." Haywood v. United States, 396 U.S. 852, 90 S.Ct. 113, 24 L.Ed.2d 101 (1969). From this day on Petitioner was never able to speak or receive anything in writing from Counsel Duffey, despite the numerous of phone calls to his office.

Moreover, the failure of Attorney Duffey to participate in the Petitioner's assistance made the adversary process unreliable. Because he refused to participate in any of the proceedings of the assistance, Petitioner was unable to subject the Government's certification of substantial assistance to "the crucible of meaningful adversarial testing" -- the essence of the right to effective assistance of counsel. United States v. Cronic, 466 U.S. 648 at 655-56, 104 S.Ct. 2039 at 2045, 80 L.Ed.2d 657 (1984). Mr. Duffey's total lack of participation deprived Petitioner of effective assistance of counsel as if he had been absent. This was constitutional error even without any showing of prejudice. In this legal environment, an attorney's failure to get a oral agreement reduced to writing "betray[a] a starling ignorance

5

of law" that is "contrary to prevailing professional norms."
Kimmelman v. Morrison, 477 U.S. 365, 385, 106 S.Ct. 2574,
2588, 91 L.Ed.2d 305 (1986); Betancourt v. Willis, 814 F.2d
1546 (11th Cir. 1987).

The Eleventh Circuit has also "implicity recognized that
counsel's tactical decision to stand not participate in a
critical stage may constitute ineffective assistance of
counsel under the Cronic standard." See Smith v. Wainwright,
777 F.2d 609, 620 (11th Cir. 1985); Harding v. Davis, 878 F.2d
1341, 1345 (11th Cir. 1989).

Nevertheless, had counsel (Mr. Jeffery Duffey) filed for
specific performance (or even notified Petitioner) that the
Government had filed and served him with a motion requesting
only 12 months for this type substantial assistance (See
Exhibit "A"), so that Petitioner could have filed or got
another attorney to file an objection or specific performance
to let this Honorable Court know the agreement that had been
made between Petitioner and the Government.  Then Petitioner
would have received a significantly different sentence
reduction.

GROUND TWO:    THE COURT ERRED WHEN IT GRANTED A REDUCTION
               IN A MANNER CONTRARY TO THE MEANING PLAINLY
               UNDERSTOOD BY THE PETITIONER AND THE
               GOVERNMENT.

The Eleventh Circuit has held that "[t]he Government is
bound by any material promises it make to a defendant as part
of a agreement that induces the defendant to cooperate."

United States v. Taylor, 77 F.3d 368, 370 (11th Cir. 1996);
United States v. Boatner, 966 F.2d 1575, 1578 (11th Cir.
1992);  United States v. Tobon-Hernandez, 845 F.2d 277, 280
(11th Cir. 1988).    "[W]hen a agreement rests in any
significant degree on a promise of the prosecutor, so that it
can be said to be a part of the inducement or consideration,
such promise must be fulfilled." United States v. Rewis, 969
F.2d 985, 988 (11th Cir. 1992)(quoting Santobello v. New York,
404 U.S. 357, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971).
"Whether the Government violated the agreement is judged
according to the defendant's reasonable understanding at the
time he entered the agreement."   Id.   "If the defendant's
understanding is disputed by the Government, we determine the
terms of the agreement according to objective standards."  Id.

Petitioner avers that the Government's offer of 50%
reduction was the "quid pro quo" that induced him to enter
this cooperation agreement.  Twelve months for testifying in a
trial like this.   Petitioner adamantly states that the
agreement was for much more than that.  No one in their right
mind would testify in a trial for 12 months off their
sentence.

Nevertheless, other witnesses that testified in the
Carmichael case received substantially disparing departures.
(See Exhibit "B") Freddie Williams received at least a 50
month reduction from the minimum mandatory guideline of 120
months.  Who knows what his actual guideline range really was.

7

Counsel for Petitioner thereby performed deficiently when he did not intimate of the above disparity between similarly testifying witnesses. Because of the disparity in departure with similarly situated witnesses, Petitioner is prejudiced as a matter of law. See Wade v. United States, 504 U.S. 181, 118 L.Ed.2d 524, 112 S.Ct. 1840 (1992). Indeed, the disparities are not rationally related to any legitimate Government interest. Therefore, the Wade court opined that a district court can craft a remedy if it finds that the refusal was based on unconstitutional motive, such as race, religion or was not rationally related to any legitimate Government interest. See also United States v. Melton, 930 F.2d at 1099 (8th Cir. 1991). [Emphasis in Original]; also see United States v. Hernandez, 996 F.2d at 65 (5th Cir. 1993).

**GROUND THREE:    PETITIONER REQUEST AN EVIDENTIARY HEARING ON THE GOVERNMENT'S "MOTION FOR REDUCTION IN SENTENCE."**

On December 1, 2005, the Assistant United States Attorney A. Clark Morris filed a Motion for Reduction in Sentence in the foregoing case upon Petitioner's substantial assistance rendered in the prosecution of Leon Carmichael. Petitioner alleges that his cooperation was extensive and certainly involved a substantial different sentence reduction. Because the Government filed the Rule 35(b) motion and served a copy to Petitioner's attorney, which who remained silent, knowing that Petitioner's agreement was for much more than 12 months.

8

Petitioner request that an evidentiary hearing be granted where the Petitioner might submit evidence in support of the agreement which was not made known to this Honorable Court in the Government's motion for reduction of sentence.

Where the Petitioner has irretrievably subjected his family and himself to great danger in providing substantial assistance in the prosecution and conviction of very high power drug dealer. Petitioner request an opportunity to personally make this agreement known to the Court via evidentiary hearing as the Government has not (either by mistake or inadvertence) completed its obligation in fully apprising this Honorable Court of the agreement of Petitioner's actions. Where Petitioner fulfilled his end of the agreement to provide substantial assistance to the United States and the United States files it's Rule 35(b) motion on the Petitioner's behalf the District Court should grant an evidentiary hearing to hear evidence of Petitioner's substantial assistance agreement. United States v. Hernandez, 34 F.3d 998 (11th Cir. 1994); United States v. Yesil, 991 F.2d 1527 (11th Cir. 1992).

DATED: This _30_ day of July, 2007.

Respectfully Submitted,

Eric M. Peagler
Reg. No. 07403-002
P.O. Box 5000
Yazoo City, MS 39194

9

## CERTIFICATE OF SERVICE

**I  HEREBY  CERTIFY**  that  I  have  served  a  copy  of  the

foregoing § 2255 to:    The Office of the U.S. Attorney
                        Middle District of Alabama
                        P.O. Box 197
                        Montgomery, AL 36101-0197

on this _30_ day of July, 2007.

Eric M. Peagler

*#: 7.9. 4x3
11"

# THE CARMICHAEL CENTER & SURROUNDING ACREAGE





**The Carmichael Center** - a MultiPurpose Facility for entertainment venues-conventions-concerts-receptions-balls-banquets-church services-distribution center-satellite campus-seminars-graduations-training - comfortably seats 3000 concert style. Designed by W.L. Bush Architects of Montgomery this is a brick building with metal roof. Ground floor is 34,560 square feet, & includes entertainment area of 24,541 square feet, including 25x49 foot stage, and 1892 square feet of office space which includes 7 private offices, a conference room, a waiting room and reception area. The mezzanine floor is 828 square feet. Lobby area includes the ticket booth. Approximately 569 parking spaces which inclues 12 handicapped spaces. 150 E. Fleming Rd. $2,500,000. Call Jimmie Ann 221-5800.

The 3 parcels (370± acres) surrounding the Carmichael Center is a short distance from the Hyundai plant site! The property runs from Fleming Road to the John Simmons property line to Catoma Creek, then runs west to Highway 331 and crosses it to the CSTX Rail line. It follows the railroad to the Otis Pierce property and turns east back to Highway 331 and runs north to the first business on the east side of Norman Bridge, turns east, then north and runs back to Fleming Road. The property has a lake, a power transmission line easement and flood plain along the creek. Great frontage on U.S. Highway 331. 4310 Norman Bridge Rd. $699,900. Call Jimmie Ann 221-5800.

▶ PRATTVILLE

▶ MONTGOMERY

# Attorney: Carmichael to testify

## Prosecutors rest case in drug trial

**By William F. West**
Montgomery Advertiser
bwest1@gannett.com

An attorney for Leon Carmichael says she plans to put her client on the witness stand to defend himself against federal drug charges.

"We anticipate it," Lisa

Williams' attorney, Barry

Wayne told District Judge Myron Thompson in court Tuesday afternoon, though she emphasized her strategy depends on how the trial goes.

Shortly after 4 p.m. Tuesday, prosecutors rested a nearly six-day case against Carmichael, who is accused of drug trafficking and money laundering, and Freddie Williams, who is accused of conspiracy.

One of the prosecution's last key witnesses was a


**Carmichael**


**Williams**

Teague, didn't indicate whether he'd put his client on the stand.

"He did me a favor, and he was looking for a favor back," Peagler said.

Peagler said the transaction, which involved 50 pounds of the drug, happened because his routine connections weren't able to bring him a supply from Mexico.

Court recessed Tuesday

federal prisoner, Eric Peagler, who said Carmichael loaned him marijuana to sell.

"He did me a favor, and he was looking for a favor at 8:30 a.m. today.

Should defense attorneys choose to put Carmichael on the stand, his case will benefit from a judge's ruling that will prohibit prosecutors from bringing up a 1976 murder conviction for which Carmichael was pardoned in 1988.

as the defense's second witness was testifying, Wayne said she expects at least a dozen defense witnesses to be called. The trial resumes

Prosecutors wanted to bring up the conviction to support testimony of some witnesses who claimed they felt threatened by Carmichael.

During the afternoon, one of the prosecutors, Terry Moorer, was rebuked by the judge for trying to make a last-minute request to enter voluminous telephone records into evidence.

"Don't do this again," Thompson said. "That's just not right."

# Williams gets 70 months in prison on drug charges

By Crystal Bonvillian
cbonvillian@gannett.com

A co-conspirator in the Leon Carmichael drug case was sentenced to nearly six years in prison Wednesday after striking a deal with federal prosecutors.

U.S. District Judge Myron H. Thompson sentenced Freddie Williams to 70 months in prison, in accordance with the sentencing agreement reached May 21.

Williams, 62, originally

faced 10 years to life in prison on charges of conspiracy to possess with the intent to distribute a controlled substance and distribution of a controlled substance.

Canary would not confirm or deny any current or future investigations of Carmichael's drug ring.

She said she is satisfied that Williams received an adequate sentence.

"The sentence that Mr. Williams received was a just sentence for the amount of involvement he had in the

Williams

Leura Canary, U.S. attorney for the Middle District of Alabama, said her office struck the deal with Williams because investi-

gators believe he could be able to help with the investigation of other individuals involved in the decadelong marijuana trafficking scheme.

Carmichael drug ring," Canary said. "He was not a very high person on the rungs of the organization's ladder. He was more or less someone who did errands for Mr. Carmichael."

Williams' attorney, Dan Hamm, did not return phone calls seeking comment Wednesday.

Carmichael was sentenced in March to 40 years in prison on drug trafficking and money laundering charges.

Former Montgomery police officer George David Salum III

was convicted of obstruction charges after releasing the photo of an undercover DEA agent to investigators working on Carmichael's defense team. The photo was later posted on a Web site seeking information on informants in the case.

Carmichael and Williams were first arrested in November 2003 after federal agents found weapons and more than 500 pounds of marijuana in Williams' house. Both were convicted in June 2005.

■ President/publisher 334-261-1582
Scott M. Brown
smbrown@gannett.com
■ Executive editor          334-261-1509

## Subscribe and save
(suggested weekly home

## Set it straight

### CUSTOMER SERVICE

*Exhibit "B"*